Okay, thank you. Good morning, everyone. Let me just test the audio. Good morning. Alana. Can you hear us? Okay. Good morning. I hear you perfectly. And more importantly, I see all of you perfectly. Good morning, Alana and wonderful. Good morning, Michael. And how about counsel on? Can you hear and see us? Okay. Yes, I can. Yes, I can as well. Okay. Yes. For everyone in in the waiting room, Zoom has worked pretty well for us as a court at times, just as with conference calls. Someone may inadvertently speak over another. We will be extra patient. We'll indulge everyone with a little extra time if that's happening. But I'm confident all will work out okay here. So with that, we have six cases for today, four of which will be argued in our first case for argument is number 19 dash 10. Ninety five McIntosh versus Wexford Health Sources. Miss Bauer, whenever you're ready. Thank you, Your Honor. Good morning, Your Honors, and may it please the court. This court has reiterated multiple times since Pavey versus Conley that a swearing contest on the issue of exhaustion requires an evidentiary hearing and live testimony to resolve. By rejecting the magistrate judge's credibility findings based on live testimony without himself hearing live testimony. The district court in this case effectively denied the parties the hearing that this court's Pavey precedent requires. This alone is reason enough to reverse, but it's not the only error. The district court also clearly erred by recognizing two competing plausible inferences from the documentary evidence and yet drawing the inference in defendants favor the moving party and by failing to hold defendants to their burden of proof. Miss Bauer, forgive me, this is Judge Rovner. Do you agree that applying Jackson's holding for bidding a district judge from rejecting a magistrate's live witness credibility findings to this purely civil context is an expansion of our holding in that case? Your Honor, we would contend that it's not, actually, because in this case, as in Jackson, the hearing itself is a civil process, but it bears on a party's constitutional rights. So in Jackson, of course, the hearing was a habeas petition hearing, and here we have a civil hearing. Yes, the exhaustion hearing, but the rights underlying this hearing are Mr. McIntosh's right of access to the court to vindicate his constitutional rights under the 14th Amendment. And so I think there's a very strong parallel here that wouldn't require an expansion of Jackson necessarily. I think that Jackson actually nicely cabins its holding in a way that could also apply here. This court could just simply state as it did in Jackson and as the Fifth Circuit did in Lewis, which this court relied on in Jackson, and say that where the factual issues underlying a hearing bear on a party's constitutional rights, the district court is required to hold a de novo evidentiary hearing. We're not asking for holding that in every case in which there are credibility findings necessary, that a district court must do live testimony. I don't think that is necessary here, although some circuits have taken it that far. That's not the holding that we seek today. I think there are a lot of parallels between Jackson and this case. Another one is that in Jackson, as here, this court had specifically ordered an evidentiary hearing to determine the issue of credibility between the parties. And here this court's paving precedent compelled an evidentiary hearing when there's a dispute between the parties. And there, as here, the magistrate judge found one party more credible than another, and the district court reversed on the papers alone. So I'd also like to say that I think the Supreme Court's equivalent between the right of writ, the right of writ of petition in habeas and the right of act, the Civil Rights Act. Yes, ma'am. I wasn't sure of the question. And a person's right under the Civil Rights Act are both important constitutional rights between which there is no meaningful distinction. And I actually think this case is a perfect example of why the court reached the conclusion that it did in Jackson and why every court of appeals to consider a similar issue since the Supreme Court's footnote in Redact has come to a similar conclusion. Live testimony in this case was absolutely critical because the exhaustion question here, as in the Pavy context, so often the case, turned entirely on the truthfulness of the respective parties. And credibility, I'd like to quickly address a point raised by counsel opposite in their briefs. Credibility here was absolutely the centerpiece of the court's determination. And although in Jackson there was only live testimony, and in this case there was live testimony and a bit of supplementary documentary evidence, I don't think that detracts from the point that credibility was the key issue here. Ms. Bowman, what would you ask us to hold? You emphasized at the beginning of your comments that your client has a constitutional right at issue here that he's trying to vindicate a constitutional right. If you had to just distill to a sentence or two the core of the holding that you're asking us to register post-Jackson here, what would it be? Your Honor, I would direct the court to footnote three of the Fifth Circuit's opinion in Lewis because I think it does a very nice job encapsulating what we're looking for. And what they said there is we limit our decision today to credibility questions involved in the determination of critical facts affecting a person's constitutional rights. And they went on to say that we do not hold that due process always requires a fact finder to see witnesses when making credibility choices involved in the finding of facts. And I think this court's language in Jackson also does a nice job that can be directly applied and translated here as well. Because in that case, the court simply held that based on the reasoning in Lewis and on the Supreme Court's decision in Radatz at footnote seven, a district court judge may not reject a magistrate judge's credibility finding based on live testimony without holding a de novo hearing. And in Jackson, this court clearly tied that holding to the Fifth Circuit's reasoning in Lewis, which was concerned with the due process right of the petitioner in that case. And I think that this court could draw the same parallel and explain that although as in Habeas, this is technically a civil hearing, it is the only door by which a prisoner may enter the courts to vindicate constitutional rights, the 14th Amendment rights that issue here. You've mentioned the centrality of credibility and how important you believe your client believes that is to our determination with regard to whether or not a hearing should have been held. I do see a reference on page eight of the magistrate's opinion that the defendants were asking the court to find McIntosh's version of events not credible. But I don't know if it's fair to characterize all of what the district court did as a credibility finding. Where do you submit we should draw the line as to what's a credibility finding versus just the district court analyzing the record that's coming up from the magistrate? Sure, Your Honor. Well, a couple of thoughts on that. I think that the documentary evidence that was submitted in this case is all bound up in the credibility inquiry. For example, Mr. McIntosh submitted two unsigned grievances, which he testified at the hearing, were simply bounced back to him unreviewed and unsigned, and which Sergeant Struberg testified he had never seen. And so the parties on that issue, as the magistrate judge recognized, told vastly different versions of the facts regarding his attempts to exhaust. And so while these two pieces of evidence that both the magistrate judge and district court considered are documentary record pieces of evidence, the party's testimony to the interpretation of them was key. And the parties also submitted competing declarations, a declaration from Mr. McIntosh and an affidavit from Sergeant Struberg, essentially attesting to their version of events that they told at the evidentiary hearing. So I think that while there's the magistrate judge's finding when it came to the ultimate issue was entirely bound up in credibility here, because what he did was he listened to the stories from each party, asked them extensive questions, and then interpreted the bit of record evidence in light of what he had heard, and in light of the credibility of the parties. And I think both parties agreed that the key here was the respective credibility of each party. At the hearing, both discussed the fact that this would come down to an issue of credibility. Who do you believe? And that's so often the case in these behavior-related hearings, because prisoners oftentimes don't have access to the administrative records that might be held by a prison. There might not be much evidence at all. And here we see there's not very much record evidence, and what there is is entirely dependent on the stories of the parties. So I'd say that the magistrate judge's opinion as to the reason that the grievances were unsigned and as to whether defendants had convincingly carried their burden of showing the availability of remedies were credibility findings. By contrast, Your Honor, the district court also made what it called a credibility finding in the final paragraph of its opinion. But it did not base that credibility finding on viewing testimony or even discernibly on the transcript or record evidence. Instead, it stated that its credibility finding was based on the two assumptions that it adopted from defendants' objections to the report and recommendation, the first being the length of the investigation and the second being Mr. McIntosh's state of mind at the time he wrote the grievances. And I would submit that although this court's precedent states that district court's findings pursuant to a paving hearing are a clear error, it's not entirely clear that these are findings pursuant to a paving hearing as opposed to just inferences drawn, or I'm sorry, as opposed to just speculations that are extra record. Did McIntosh ever argue that the effect of all the drugs in his system at the time of his suicide attempt could have prevented him from properly exhausting? No, Your Honor, he didn't. His argument was that he attempted to exhaust and then again the next day after vomiting the pills attempted to again. And if Your Honors have no further questions, I will reserve the remainder of my time for rebuttal. Okay, that's fine. Thank you, Ms. Bauer. And we'll turn to Mr. Wimmer. You'll argue first and then Ms. Lewis second.  Yeah, go ahead. Good morning and may it please the court. My name is Alex Wimmer on behalf of appellees. This morning, I will be addressing for the court the issue of whether the district court committed clear error in their finding of fact, leading to the determination that Mr. McIntosh did not exhaust his administrative remedies under the St. Clair County Jail procedure. Co-defendant, counsel attorney Lewis, will be addressing the issue of whether a second evidentiary hearing was needed to be held by the district court and the district court's decision to not consider the affidavits submitted by Mr. McIntosh. The question before this court this morning is whether the district court committed clear error in finding that Mr. McIntosh did not submit the captain's request and grievance necessary to exhaust the jail's grievance procedure. In order for this court to find clear error, it must have a definite and firm conviction that a mistake has been committed. Under that standard, the district court did not clearly err in finding that Mr. McIntosh did not follow the grievance procedure. Or in finding that Mr. McIntosh, I'm sorry, that Mr. McIntosh's allegation he attempted to follow the procedure was prevented from doing so by the prison staff as not reasonably believed. Forgive me, was there any particular procedure in place for obtaining so-called captain's request? Could an inmate get a copy of the form at any time? The jail's grievance procedures state that detaining grievance forms can be obtained from any supervisor or correctional officer. However, I will note that Mr. McIntosh's second alleged captain's request that he says he submitted on August 5th was not written on a form but was handwritten on plain paper. And so it would be our contention that he could have also submitted a grievance in the same way despite his claims that he was not given a form. Mr. Wimmer, do you agree, at least at this level, that the district court made credibility findings? I agree that the district court reviewed the evidence and determined based on that evidence that one story was more likely true than another. So does that mean yes? I would say that that's a definition of credibility, yes. Okay. Okay. Did you ever argue before the magistrate judge that he would have been too impaired by the medications to have even written the grievance at the time of the original incident? I believe that that argument was made before the magistrate judge. It was certainly made before the district court. I would have to double check to see if it was made before the magistrate judge. But certainly, Mr. McIntosh himself admitted that in regards to the first alleged captain's request that he submitted, he stated that, quote, his thoughts were clouded. I'm sorry, for the first one, he stated, quote, he could not think straight at the time that he wrote that request. And in regards to the second alleged captain's request on August 5th, he stated, quote, his thoughts were clouded and jumbled from the lingering effects of illegal medication. So the argument was certainly made that it was unlikely that he could write the fairly eloquently written lengthy and detailed captain's request at that time. Did you submit evidence supporting your argument about how impaired he would have been given the particular cocktail of pills he had taken? In other words, is there any evidence in the record, for example, of exactly what pills he had taken, how they were likely to have impacted him? Something that would support your assertion as to his level of impairment. There is no direct evidence of his level of impairment beyond his own statements regarding his level of impairment. However, in the record, it is stated the types of pills that were found in his possession, which types of pills there were, but there's no direct evidence as to what pills he took on that day. Mr. Wimmer, the difficulty that I have with this is, and it would help to hear your response, I think what your adversary is saying is that in this situation, this is a total he said, he said. And the only way to resolve this is through a hearing where witness testimony is taken and credibility findings are made. And there's nothing that precludes the district court, as a matter of law, from making a contrary finding. But I think what Ms. Bauer is saying on behalf of Mr. McIntosh is that you can't do that on paper alone. Why isn't that correct? This just seems to me, I mean, if we sat down with a blank piece of paper and tried to hypothesize a he said, he said, it's a great example. And who knows who's right? Well, we disagree that it is a he said, he said, because of the vast amount of documentary evidence that's in this case. You know, there's a sworn affidavit from Sergeant Struberg, the jail record accompanied by a custodian's affidavit showing that these captains' requests were not included in the jail record. You have to evaluate the evidence in the light most favorable to Mr. McIntosh. Don't you, as a matter of law at this stage, you have to. So go ahead and go ahead and do that and then make your point. At the summer judgment stage, Your Honor is correct. And we believe that even in the light most favorable to Mr. McIntosh, when looking at all of this evidence, it just makes Mr. McIntosh's story unbelievable. And that the district court did not clearly err in coming to that conclusion. You know, all of this evidence, like I stated before, the sworn affidavit from Sergeant Struberg. These things show that Mr. McIntosh's story just is so incredible as to not be believable. Therein lies the problem, though. Go ahead, Judge Roper. I'm sorry. No, no, I'm sorry. You go ahead. I'll let you go. Thank you. You know, for instance, the district court essentially found that McIntosh had forged the captain's request, didn't it? I mean, how would that not be a credibility finding? Your Honor, I see my time has expired. Are you okay with me answering your question? Yeah, of course, please do. I'll thank you if you don't. Okay, so the district court did not explicitly say that it was forged. The district court simply said that it was not submitted in the way that McIntosh claimed it was submitted. That's why I used the word essentially, I think. I think I used the word essentially. I would agree that that's a credibility finding based on the evidence that the district court was able to look at, the documentary evidence. They looked at the record. The clear error standard requires that if the district court's account of the evidence is plausible in light of the entire record, that the district court should not be reversed. And I think when the district court looked at all this evidence in light of the entire record, that the findings that it came to were plausible. For that reason, we ask that you affirm. I just want to make one more point and that, or ask one more question. The district court also noted that it agreed and used the word agreed with the defendants that McIntosh either did not write the grievance when he claims or was too impaired to have written it then. And that's what I'm finding problematic. That a court at the summary judgment stage uses the word agree with the defendant's assessment of the plaintiff's credibility. I'm not sure I understand your question, Judge. Are you asking why the district court agreed with that? I'm asking you if it's problematic for him to have agreed that he did not write it when he claimed or was too impaired to have written it then. In other words, he took both views and said, well, if it was this, I agree. If it was that, I agree. And it seems to me that that's problematic. I would disagree with that, Your Honor. I think that the district court found that Mr. McIntosh has put himself in something of a box. He wrote these very eloquent captain's requests that were lengthy. I believe between the two of them, they were about nine pages long. And they matched similarly with even defendants admitted in their reply brief that they matched similarly with some of McIntosh's other captain's requests that were in his IDOC record. And so if Mr. McIntosh admittedly asserted that he was a little bit out of his mind and being affected by these prescription drugs, but also said he wrote them at that time, that put him in a bit of a box. And it was hard for the district court to believe that he wrote them at that time and was under the influence of these medications. Okay. Thank you, Mr. Wimmer. I appreciate it very much. We'll go to Ms. Lewis. Good morning, Your Honors. May it please the court. My name is Megan Lewis, and I'm appearing on behalf of Defendants Appellees, Wexford Health Sources Incorporated, and Barbara Rodriguez. As Mr. Wimmer noted, I will be presenting argument on the issue of whether a second payee hearing was required and the issue of whether the district court properly excluded from evidence hearsay statements by two inmates at the St. Clair County Jail. As to the issue of the second payee hearing, it is clear that existing precedent does not mandate a district court to conduct a second payee hearing with the same live witnesses before the district court can reject a magistrate's report and recommendations based on the full record before it. Ms. Lewis, help us out with the sequence here, because Magistrate Judge Wilkerson, according to the transcript, has the evidentiary hearing on August 15th. Then we've got his written nine-page order, Docket Entry 51, which is predated to July 20th of 18, and then we've got the district court's six-page order, Docket Entry 51, which is dated November 14th, 2018. I may have the Docket Entry numbers transposed, but regardless, help us out with that sequence, and if you could fold into your answer, do you know whether there was any discussion as to whether or not there would be an evidentiary hearing before Judge Gilbert? Sir, you're asking on whether or not there was an opportunity for Judge Gilbert to entertain a second payee hearing? Was that asked? Did either counsel ask for it to be in person and take evidence in November, and why did Magistrate Judge Wilkerson's written order predate the evidentiary hearing date? There's no clear reason on why exactly Judge Gilbert's order was predated, other than the fact that the initial payee hearing was scheduled in June of that year, and due to technical difficulties, it did have to be continued to August. So the substantive evidence before Judge Wilkerson was in the August transcript, so it is possible that the magistrate had already started reviewing the record and had started writing his report and recommendations before fully hearing all the evidence at the August evidentiary hearing. Did you make any attempt before the magistrate judge or the district judge to clarify the alleged discrepancy on the report? Because you're holding it up as evidence. I don't believe any party had sought clarification on that particular timing of the entry. Then how can you hold this up as evidence that the magistrate judge may not have been relying on actual testimony for his findings and conclusions? Well, I think the lack of clarity provided by the timing of the entry and the ultimate disposition of the magistrate's report and recommendations was not lost on the district court judge. And of course, the district court judge is free to accept, reject, or modify in whole or in part, and it's his full discretion to do so. Ms. Lewis, further to that question concerning requests, did anybody ask, is the record reveal whether anybody asked for a second evidentiary hearing? Either party? No, no party asked for a second payee hearing. You may continue. I think what's important here, too, is that a district court's assurance in its written order that it has complied with requirements of Section 636 of the Federal Magistrates Act in reviewing a magistrate judge's finding of facts and recommendation is sufficient in all but the most extraordinary cases to resist assault on appeal. Here, Judge Gilbert expressly stated in his order that he conducted a de novo determination of the paving hearing transcript as well as the full record of the case. Again, that's not just the transcript itself. Sorry. If we agree with Mr. McIntosh that the magistrate judge did, in fact, make an adverse credibility determination against Mr. Struberg, do you still maintain that the district court can override that determination without a hearing? I think the issue here is that it's not purely a credibility issue. The district court is not required to make unreasonable inferences. So when it's making credibility determinations and examining the full record, it need not examine unreasonable inferences based on the record before it. Did you ever, by the way, challenge as inadmissible hearsay the affidavits Mr. McIntosh submitted from those fellow inmates about the conversations that they alleged to have overheard between Mr. McIntosh and Mr. Struberg? It was not expressly challenged on the specific issue of inadmissible hearsay. I know at the Pavey hearing, the judge took the affidavits under advisement without entertaining any argument as to the issue. Wexford and Nurse Rodriguez did object to the propriety and the admissibility of those affidavits on the grounds that they were irrelevant and lacked probative value. But to the specific point of inadmissible hearsay, no. However, a plaintiff can never rely on inadmissible evidence to overcome summary judgment. Any further questions? Okay, thank you, Ms. Lewis. Ms. Bauer, we'll return to you, and you have a little over four minutes. Thank you, Your Honors. I'd like to make two quick points about the clear error arguments and then two about the Jackson arguments, if it's all right with this Court. So first, I would like to say that counsel opposite relies heavily on the clear error standard to defend the district court's conclusions in this case. But this court has explained that, yes, pursuant to a Pavey hearing, findings of fact and credibility are reviewed for clear error. But the exhaustion determination is otherwise a summary judgment question. And as the district court in this case properly recognized, it was required to draw all reasonable inferences in Mr. McIntosh's favor. I just wanted to specifically point out that when it came to the two grievances, the district court itself, after articulating the correct standard, explicitly recognized that there were two plausible inferences to be drawn from those grievance forms and the lack of signatures. And yet, it drew the inference in defendant's favor. I don't believe this is a finding that is reviewed for clear error. We're reviewing summary judgment de novo in this case, and I ask this court to do so. Quickly, on the point of defendant's only evidence for the reason that Mr. McIntosh should have been unable to draft grievances is his own complaint statement that he couldn't think straight. I think, Your Honors, that in this case, it's complete speculation to base an entire summary judgment finding, well, halfway, on this statement because there's absolutely no evidence as to what Mr. McIntosh meant by this. And in fact, directly following this statement in his complaint, he goes on to talk about the fact that he was contemplating suicide and took an active step for the first time in his life. And so, I would submit that there's no evidence that this meant that he wasn't unable to formulate a grievance, but rather that he was contemplating suicide. As to the Jackson issues, I believe one of Your Honors asked about whether the magistrate judge's finding was indeed, if the magistrate judge's finding was indeed an adverse credibility finding. And I would just like to point this court again to the Fifth Circuit's decision in Lewis because the court there also began its opinion by evaluating whether there was in fact a credibility finding at issue. The losing party in that case had suggested that because the magistrate judge didn't explicitly state that he found the losing party incredible, that there wasn't a credibility finding in that case. And what that court said was that by crediting one party's version of events, the judge of necessity discredited the other party's diametrically opposed version of events, such that the findings that were based on live testimony were absolutely credibility findings in that case. And the same is true here. The magistrate judge did not explicitly state that Sergeant Struberg's story was incredible, but by finding McIntosh's vastly different version of events credible and rejecting the invitation to find him incredible, the magistrate judge of necessity found one party more credible than another. Your Honors, we would also say that we have absolutely no quarrel with the Federal Magistrates Act. A district court is, of course, absolutely entitled to adopt, reject, or accept a magistrate judge's findings. However, we only submit that in a case such as this, the district court can only do so after hearing live testimony. In the event where this court has held that a district court must make a decision based on live testimony, only by hearing the testimony himself does he have an adequate basis on which to do so. And finally, as to the affidavits, we would say that while they serve to bolster Mr. McIntosh's credibility, they are in no way necessary to the actual exhaustion finding. This court has plenty of precedent stating that once an inmate has attempted to exhaust, he need not continue futilely attempting to do so. And we submit that that would be the case. These affidavits went to the longevity of the investigation and not necessarily to Mr. McIntosh's initial attempts to exhaust on August 4th, for which there was no competing evidence. So, Your Honors, we would ask that this court either remand for a hearing under Rule 36 in accordance with Jackson or reverse and allow Mr. McIntosh to proceed on the merits of his claim. Thank you. Okay. Thank you, Ms. Bauer. Thanks to all counsel. The case will be taken under advisement.